IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARY B. GADSON,** | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] CV-09-BE-0143-S |
| | ] |
| **MICHAEL J. ASTRUE, Commissioner** | ] |
| of the Social Security Administration | ] |
| | ] |
| Defendant. | ] |

### MEMORANDUM OPINION

Claimant Mary Gadson applied for a period of disability and disability insurance benefits on April 26, 2004. The Commissioner denied the claims. The claimant then requested and received a hearing before an Administrative Law Judge. On May 5, 2007, the ALJ held that Gadson was not disabled within the meaning of the Social Security Act, and therefore, was not eligible for period of disability or DIB payments. Gadson then applied to the Appeals Council for review. On November 20, 2008, the Appeals Council denied Gadson's request for review. This denial constituted the final decision of the Commissioner of Social Security and the exhaustion of Gadson's administrative remedies. The case is now before the court for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Based on the court's review of the record in this case and the parties' briefs, the court concludes that the decision of the Commissioner should be AFFIRMED.

### ISSUE PRESENTED

In this appeal, Gadson argues that the ALJ did not properly apply the Eleventh Circuit

1

pain standard when he evaluated Gadson's subjective complaints of pain.

## STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record which support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to:

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see* 20 C.F.R. §§ 404.1520, 416.920.

A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1999) (reciting the requirements of three-part "pain standard").

A reversal is warranted if the ALJ's decision contains no evidence of the proper application of the three-part standard. *Holt*, 921 F.2d at 1223; *see also Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). However, the ALJ does not have to recite the pain standard

3

word for word; rather, the ALJ must make findings that indicate that the standard was applied. *Cf. Holt*, 921 F.3d at 1223 (holding that the ALJ's decision did not show that he applied the pain standard where ALJ did not make a finding on whether claimant's alleged pain satisfied the second or third prongs of the pain standard); *Brown*, 921 F.2d at 1236 (remanding case where Secretary's decision contained "no indication that he applied the three-part pain standard to [claimant's] testimony").

## BACKGROUND

Gadson was 65 years old at the time of the administrative hearing. She has a high school education. (R. 342). In the past, Gadson worked as a daycare director, daycare teacher's assistant, and housekeeper. (R. 353-54). Gadson alleges that she has been unable to work on a full time basis since February 7, 2006[1] because of chronic, moderately severe pain from degenerative disk disease and cervical disk disease. (R. 341). Gadson is insured for disability insurance benefits through December 31, 2009.

On February 7, 2006, Gadson went to the emergency room and complained of low back, arm, and hand pain. (R. 144). Despite Gadson's complaints of hand pain, the treating physician noted that Gadson's grip strength was 5/5 bilaterally. (R. 143).

On June 9, 2006, Dr. Ellouise Cotton examined Gadson and observed that Gadson's extremities had no clubbing, cyanosis, or edema. Further, Dr. Cotton did not detect any focal neurological deficits. (R. 180). Dr. Cotton's diagnoses included spinal stenosis and chronic

---

[1] Gadson initially alleged disability beginning on July 27, 2002. (R. 48). During the hearing before the ALJ, Gadson amended the alleged onset date to May 1, 2004. (R. 341). Gadson later amended her alleged onset date to February 7, 2006, the date she last engaged in work activity. (R. 23).

narcotic use. On examination by Dr. Cotton in August 2006, Gadson complained of back pain. However, Dr. Cotton reported the claimant had not been taking her relaxant medications or anti-inflammatory medications as prescribed. (R. 198). Again, Dr. Cotton's physical examination of Gadson revealed no clubbing, cyanosis, edema, or motor neurological deficits.

On June 29, 2006, Dr. Bruce W. Romeo, a consultative occupational medicine specialist, completed a physical examination of Gadson. Dr. Romeo noted that Gadson's lungs were clear to auscultation bilaterally with no wheezing, rales, or rhonchi. Gadson's heart rate was regular in rate and rhythm with no murmurs. Gadson's range of motion was within normal limits throughout the body, including the cervical spine, dorsolumbar spine, shoulders, elbows, forearms, hips, knees, ankles, and wrists. Her neck had no spasms or deformity. Gadson's gait was normal with no assistive device. She was able to walk on her heels and toes, stoop, and kneel. With maximum effort, she would crouch and tandem walk. Gadson's joints had no deformity, tenderness, effusion, clubbing, cyanosis, or edema. All Gadson's muscle groups had 5/5 strength. Gadson's sensation, reflexes, manual dexterity, and manipulation were intact. Dr. Romeo's diagnosis included chronic low back pain with underlying degenerative disc disease and right thumb and bilateral knee pain as a result of Gadson's underlying degenerative joint disease. (R. 112-17)

Dr. Romeo completed a medical source opinion and opined that Gadson could sit without limitation; could walk for one hour at a time and for a total of eight hours during an eight hour day; could stand for one hour at a time and for a total of eight hours during an eight hour day; could frequently lift and carry ten pounds and occasionally lift and carry fifteen pounds; could constantly reach overhead, balance, and push and/or pull with either arm or leg; could frequently

kneel, finger, and handle objects; could occasionally climb and kneel; could never stoop, crouch, or crawl; and had no environmental limitations. (R. 118-20). The ALJ accorded significant weight Dr. Romeo's finding regarding Gadson's ability to perform work activity; however, the ALJ rejected Dr. Romeo's conclusion that Gadson could stand and/or walk for eight hours a day because that conclusion was not supported by the evidence. (R. 21).

In August 2006, Gadson began receiving medical treatment from Dr. Theodis Buggs Jr. for complaints of bilateral hand pain. Dr. Buggs diagnosed Gadson with bilateral de Quervain's syndrome and prescribed braces for Gadson to wear on each wrist. In addition, Gadson received an injection in her right wrist. Because of her continued complaints of pain, Dr. Buggs referred Gadson to Dr. David Ostrowski, a specialist in orthopedic surgery. (R. 191-94). Dr. Ostrowski diagnosed Gadson with arthritis in the right hand. (R. 218). On January 12, 2007, he performed surgery on Gadson's hand. (R. 219).

At the administrative hearing, Gadson testified that she has pain in her back, neck, and hand. She stated that she has had neck and back pain since the 1970s and that she takes Lortab for the pain. According to Gadson, on a typical day, her pain is at level 8 on a scale of 10. (R. 344). To help relieve the pain, Gadson lies down and takes medicine. Gadson stated that she could not function without her medication. Gadson testified that she lies down at least six hours a day. She also complained that her pain wakes her up at night. (R. 345).

Gadson alleges that she cannot do much housework; her granddaughter does most of the laundry and vacuuming. (R. 346). Gadson testified that after she stands thirty minutes her back starts hurting. She can sit for about thirty minutes and walk about two blocks. Gadson asserts that she might be able to lift eight to ten pounds, but she has problems with her right hand and

thumb. (R. 346-47).

The ALJ found that Gadson had not engaged in substantial gainful activity since her alleged disability onset date of February 7, 2006. (R. 18). The ALJ also found that Gadson has the following severe impairments: degenerative disc disease, arthritis, and degenerative joint disease in the hands. (R. 18). Next, the ALJ concluded that Gadson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (R. 19).

Next, the ALJ assessed whether Gadson retained the residual functioning capacity ("RFC") to perform the requirements of her past relevant work. (R. 19-22). Based on Gadson's testimony, which the ALJ did not find entirely credible, and medical records, the ALJ determined that Gadson retained the RFC to perform sedentary exertional work that does not require stooping, crouching, or crawling. (R. 19). The ALJ determined that Gadson's medically determinable impairments could reasonably be expected to produce Gadson's alleged symptoms, but Gadson's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible. (R. 20).

During Gadson's hearing, the ALJ asked the vocational expert to identify Gadson's past relevant work, including the complexity and exertional demands of the identified jobs. (R. 353). The vocational expert responded that Gadson has performed past relevant work as a daycare director, which is skilled in complexity and requires sedentary exertional demands; and as a housekeeper, which is unskilled in complexity and requires medium exertional demands. (R. 353-54). Then, the vocational expert stated that given the ALJ's determination of Gadson's RFC, Gadson could return to the job of daycare director. (R. 354). The ALJ concluded that

Gadson is capable of performing her past relevant work as a daycare director; thus, Gadson was not disabled as defined in the Social Security Act. (R. 22).

## DISCUSSION

In determining whether Gadson had the RFC to perform sedentary exertional work, the ALJ properly applied the pain standard to Gadson's subjective complaints of pain. The pain standard requires (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Here, the ALJ properly articulated and applied the pain standard and the factors to consider when evaluating Gadson's pain. (R. 19-20).

The ALJ explicitly stated that Gadson suffers from the following medical conditions: degenerative disc disease, arthritis, and degenerative joint disease–satisfying the first requirement of an underlying medical condition. Because the record does not contain objective medical evidence to support Gadson's claims of severe pain, the ALJ next evaluated whether her medical condition is of such a severity that it can be reasonably expected to give rise to Gadson's alleged severe pain.

Although the ALJ determined that Gadson's condition *could* give rise to Gadson's alleged pain, the ALJ explicitly discredited Gadson's testimony regarding the intensity, persistence, and limiting effects of her pain. The ALJ noted inconsistencies between Gadson's subjective complaints and her physicians' objective findings to support his determination that Gadson's testimony was not credible. For example, the ALJ noted that although Gadson

8

complained of low back, arm, and hand pain, her grip strength was strong. The ALJ also accorded significant weight to the portion of Dr. Romeo's consultative medical source opinion related to Gadson's ability to work. The ALJ stated that the examination findings of Dr. Romeo, an occupational medicine specialist, support his conclusion that Gadson is able to perform work activities. The ALJ's explicit findings are adequate to discredit Gadson's testimony and supported by substantial evidence. Thus, the ALJ did not err in determining that the record does not contain objective signs or findings that could reasonably be expected to produce the degree and intensity of Gadson's alleged severe pain.

Also, because no other physician's report, treating or consultative, contradicted Dr. Romeo's report, the ALJ did not err by according great weight to the report. *See Edwards v. Sullivan*, 937 F.2d 580, 585 (11th Cir. 1991). In fact, no other physician provided an opinion on whether Gadson was capable of working. Further, the ALJ did not err by rejecting Dr. Romeo's opinion that Gadson could sit and/or stand for eight hours a day because the ALJ can reject any medical opinion if the evidence supports a contrary finding. *See Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Therefore, the ALJ did not err when he relied on only a portion of Dr. Romeo's report to evaluate Gadson's subjective complaints under the pain standard.

**CONCLUSION**

For the reasons stated above, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

DONE and ORDERED this 3rd day of December, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE